Corey **BOTNER**, Plaintiff and Appellee,

v.

William **BOTNER**, Defendant, Third–Party Plaintiff and Appellant,

v.

Rosalie **BOTNER**, Third–Party Defendant.

Civil No. 950268.

Supreme Court of North Dakota.

March 19, 1996.

Lynn Anderson Kerbeshian (argued), Grand Forks, for plaintiff and appellee. Appearance by Corey Botner.

Neil W. Fleming (argued), Fleming, Du-Bois, Trenbeath & Einarson, Cavalier, for defendant, third-party plaintiff and appellant.

NEUMANN, Justice.

William Botner appealed from a judgment requiring him to pay college expenses for his son, Corey Botner, under a 1978 divorce decree. We affirm.

William and Rosalie Botner were divorced in 1978. They had three children during their marriage, Chad, Corey, and Collin. At the time of the divorce the children were ages 12, 8, and 7, respectively, and all are now adults. William and Rosalie executed a written stipulation regarding the incidents of the divorce, which was incorporated into the divorce decree.

In February 1993 Corey brought an action against William to enforce the following paragraph in the divorce decree:

"12. EDUCATION. The parties, recognizing the importance of higher learning, do hereby mutually agree to share the financial responsibility, to the best of their ability, should any child or children of the parties desire to actively pursue a college education."

When the complaint was filed, Corey was a junior at the University of North Dakota, majoring in aeronautical studies. William answered, denying he was obligated to pay college expenses for Corey. William also filed a third-party complaint against Rosalie, asserting he had paid $25,000 to Rosalie in total satisfaction of his child support obligations and seeking reimbursement from her for any college support the court might order him to pay for Corey under the 1978 divorce decree.

Corey filed a motion for summary judgment. The trial court issued a partial summary judgment declaring William and Rosalie were obligated under the divorce decree to provide "to the best of their ability" for Corey's education expenses. The court also held an evidentiary hearing to determine how much each parent was obligated to pay. The trial court entered judgment on June 21, 1995, awarding Corey judgment against William for $28,956.83, including costs and attorney fees, and against Rosalie for $6,167.61. The court also declared in the judgment that Rosalie had satisfied her obligation to Corey by making prior contributions toward his college education. William appealed.

Corey's complaint requested "his rights as a third-party beneficiary to the stipulation and Judgment be enforced."[1] William responded that the education expense provision in the stipulation is unenforceable as a contract, because it does not meet the writing requirements of the statute of frauds and it is too vague to demonstrate a meeting of the

1. Corey's standing to enforce the 1978 divorce decree has not been challenged and we do not address the issue.

parties' minds. With these arguments, William misled the court into conducting a contract analysis, instead of simply construing and applying the divorce decree.

■ The parties in *Sullivan v. Quist*, 506 N.W.2d 394, 399 (N.D.1993), made a similar mistake in arguing about the intent of a stipulated provision over college expenses that was incorporated into their divorce decree:

> "The parties have presented this question as one involving the interpretation of the parties' settlement agreement.... The majority view, however, is that a settlement agreement that is wholly incorporated into the divorce judgment is merged into that judgment and ceases to be independently viable or enforceable.... Once the settlement agreement is merged into the divorce decree, it is interpreted and enforced as a final judgment of the court, not as a separate contract between the parties.... We agree with the result and the rationale of these cases, and we adopt the merger doctrine in this case." [Citations omitted.]

Consequently, when a stipulation is incorporated into a divorce judgment, we are concerned only with interpretation and enforcement of the judgment, not with the underlying contract. *Johnson v. Johnson*, 527 N.W.2d 663 (N.D.1995); *Anderson v. Anderson*, 522 N.W.2d 476 (N.D.1994). Interpretation of a judgment is a question of law for the court. *Sullivan v. Quist, supra*, 506 N.W.2d at 398, 401. We review questions of law de novo.[2] *Anderson v. Anderson, supra*, 522 N.W.2d at 478–479.

■ The disputed paragraph in the 1978 divorce decree unambiguously provides that William and Rosalie will share the financial expense of providing a college education for any of their children who desire it. Although the trial court improperly used a contract analysis, it nevertheless reached the correct result in concluding William and Rosalie had

an obligation under the decree to provide financial assistance for Corey to attend college. This court will not set aside a correct result merely because the trial court assigned an incorrect reason, if the result is the same under the correct law and reasoning. *Hummel v. Mid Dakota Clinic, P.C.*, 526 N.W.2d 704 (N.D.1995). We conclude the trial court did not err in declaring, as a matter of law, the 1978 divorce decree imposed an obligation upon both William and Rosalie to share in the cost of Corey's college education.

The trial court held an evidentiary hearing to determine, under the circumstances, how much each party would be required to pay toward Corey's education, in accord with the decree requiring William and Rosalie to share college expenses "to the best of their ability." After the hearing, the trial court made the following relevant findings of fact:

> "The first issue the Court must decide is what are Corey's educational expenses. The Court determines that Corey's educational expenses, from 1988 until the projected time when he should get a degree, to be $68,529.00.

\* \* \*

> "The Court determines that an equitable division of Corey's educational costs based on the ability to pay should be as follows: Corey should be responsibl[e] for one half of his education expenses, including grants. Thus, Corey should be responsible for $34,264.50 of his educational costs. Rosalie and William should be responsible for one half of the costs, or the other $34,264.50 in educational costs. As previously stated, Rosalie's income has been in the amount of $81,400.00 and Bill's income has been in the approximate amount of $366,178.00. Hence, their total income is $447,578.00. Rosalie has earned 18 percent of the income and Bill has earned 82 percent

2. When a judgment is clarified by the same trial judge who entered it, "we should afford such a clarification considerable deference.... On the other hand, when one court interprets the decree of another court, the interpreting court is in no better position than we are to determine the original judge's intentions should the decree con-

tain ambiguities. This Court reviews such interpretations *de novo*." *Anderson v. Anderson*, 522 N.W.2d 476, 478–479 (N.D.1994). Here, the divorce decree was not clarified by the judge who entered it, but was interpreted by a different judge after its entry. Thus, de novo review applies.

of the income over Corey's educational period of time.

"Thus, Rosalie should be responsible for 18 percent of $34,264.50, or $6,167.61, while Bill should be responsible for $28,096.89."

■ Our review of the trial court's findings of fact is governed by Rule 52(a), N.D.R.Civ.P., and we will not overturn them unless they are clearly erroneous. *See, e.g., Anderson v. Anderson, supra,* 522 N.W.2d at 479. The parties have not seriously challenged these findings. We conclude the court's findings are supported by the evidence in the record and are not clearly erroneous.

■ William argues the trial court erred in denying his request for a jury trial. William's argument is based upon the mistaken premise that Corey's action is an action for monetary damages for breach of contract. As we have previously indicated, the stipulation was merged into the divorce decree and thereby ceased to be independently viable or enforceable. Corey's action is not of contract, but of enforcement of a divorce decree. The fact issues about what are Corey's education expenses and how much of those expenses his parents have the ability to pay directly relate to interpreting and implementing the divorce decree. They originate from the 1978 divorce proceedings, are equitable in nature, and are for the court, not a jury, to decide. *See Selland v. Selland,* 519 N.W.2d 21 (N.D.1994); *Martian v. Martian,* 328 N.W.2d 844 (N.D.1983). We conclude the trial court did not err in denying William's request for a jury trial.

■ William also argues on appeal that any obligation he had under the divorce decree to provide financial support for Corey's college education was satisfied when he paid Rosalie a $25,000 lump sum in 1991, for which she issued a written "Partial Satisfaction of Judgment." We disagree. The parties' child support obligations and college expense obligations were separate and independent provisions under the divorce decree. The partial satisfaction of judgment executed by Rosalie merely acknowledges payment and satisfaction of "all alimony, child support payments and costs." There is no reference to William satisfying his obligation to share college education expenses, and we conclude, therefore, William's argument on this issue is without merit.

As part of the judgment, the trial court declared William's obligation to pay Corey's college expenses, "shall not be dischargeable in bankruptcy." William argues the trial court did not have jurisdiction to determine whether the obligation was dischargeable in bankruptcy because that determination "rests within the exclusive jurisdiction of the bankruptcy court." William has not informed us of any pending action to discharge this obligation in bankruptcy. We, therefore, conclude this issue is not ripe for review. This court does not render advisory opinions. *State ex rel. Sprynczynatyk v. Mills,* 523 N.W.2d 537 (N.D.1994).

The judgment is affirmed.

VANDE WALLE, C.J., MESCHKE and SANDSTROM, JJ., and BERYL J. LEVINE, Surrogate Judge, concur.

VANDE WALLE, Chief Justice, concurring.

The majority notes in footnote 1 that "Corey's standing to enforce the 1978 divorce decree has not been challenged and we do not address the issue." Because the issue of Corey's standing was not raised or briefed and, as I assume for purposes of this concurrence, standing is not jurisdictional, I agree with the majority. I write, however, to express some skepticism over Corey's standing. Ordinarily a litigant may assert only his own rights. *Application of Otter Tail Power Co.,* 451 N.W.2d 95 (N.D.1990); *Hovet v. Hebron Pub. Sch. Dist.,* 419 N.W.2d 189 (N.D.1988).

Although it may appear Corey is enforcing his own right, it is Rosalie, his mother, who has the right under the divorce decree. Thus in *Anderson v. Anderson,* 522 N.W.2d 476 (N.D.1994) and *Sullivan v. Quist,* 506 N.W.2d 394 (N.D.1993), it was the mother who brought the action. Here, Rosalie was not a party to Corey's proceeding until named as a third-party defendant by William. I am skeptical that so-called "third-party beneficiaries" should be allowed to sue to enforce provisions of divorce judgments. *Cf. Thorson v. Thorson,* 541 N.W.2d 692 (N.D.

1996) [denying personal representative motion to substitute herself as plaintiff in divorce action to pursue equitable distribution of parties' marital property to children after plaintiff died]. Marriage is a relationship personal to the parties of the marriage. N.D. Cent. Code § 14-03-01. The divorce is between the parties, not the children of the parties. N.D. Cent. Code § 14-05-01(2). Because the concept of third-party beneficiary, upon which Corey relies, is a contract concept, my skepticism is heightened in light of our holdings that the contract between the parties is merged into the order of the trial court, *e.g.*, *Eberhart v. Eberhart*, 301 N.W.2d 137 (N.D.1981), and that a contract analysis of the divorce judgment is improper.

I am concerned the majority opinion will be construed as an invitation for creditors or others who claim interest in the divorce decree to bring action to enforce it. They should not. Under normal circumstances enforcement of the decree is a matter for the parties and our holding might well be different were the standing issue raised.

SANDSTROM, J., concurs.